*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* K. R. SHOMIN, Minor.

UNPUBLISHED
May 25, 2023

No. 363274
Grand Traverse Circuit Court
Family Division
LC No. 21-004971-NA

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's disposition order in this child-protection case involving his minor child, KS. The court authorized the petition after the preliminary hearing, removed KS from the custody of his parents, and continued KS's placement in a licensed foster care home. A jury found that jurisdiction was met under MCL 712A.2(b)(2), and the court has taken temporary jurisdiction over KS. Respondent, who is a member of the Grand Traverse Band of Ottawa and Chippewa Indians (GTBOCI), contends that his trial attorney was ineffective for failing to appeal the initial removal decision. Finding no error warranting reversal, we affirm.

## I. BACKGROUND

In August 2021, the Department of Health and Human Services (DHHS) filed an emergency petition requesting the court to take jurisdiction over three-month-old KS. DHHS alleged that the child's mother left KS unattended at a homeless shelter for over an hour and later "dropped" KS into a bassinet on the floor. At the time of the incident, KS's mother appeared to be under the influence of some substance. There were concerns for KS's safety because his mother had mental-health and substance-abuse issues, was unable to provide stable living conditions, and had been the subject of multiple CPS investigations since KS's birth.[1] Respondent has been incarcerated for KS's entire life and thus unavailable to provide for the child's care and custody.

---

[1] KS tested positive for amphetamines and methamphetamines at birth. Just days after KS's birth, the child was found unattended in a car seat in 91-degree heat at a homeless encampment.

KS was removed from the care of his mother and respondent and placed in a licensed foster care home on an emergency ex parte basis.

After KS's emergency removal, respondent offered his mother as an alternate caregiver. But the GTBOCI determined that respondent's mother was not appropriate for placement. Respondent failed to identify any other relatives that were available or met the criteria for placement. Following extensive testimony at the preliminary hearing, the petition was authorized and KS was continued in foster care. Respondent's attorney did not appeal the decision. A trial was held regarding adjudication, and the jury found that jurisdiction had been established. The court continued KS's placement in foster care at the dispositional hearing. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that his trial attorney was ineffective for failing to appeal the initial removal decision following the preliminary hearing. We disagree.

### A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's factual findings, if any, for clear error, and the constitutional issue is reviewed de novo. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Because this issue was not raised below and an evidentiary hearing was not requested, the issue is not preserved. We review unpreserved issues for plain error affecting the party's substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citations omitted). When, as in this case, an evidentiary hearing has not been held, our review is limited to mistakes apparent from the record. *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017).

### B. ANALYSIS

The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings[.]" *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). The pertinent questions are whether "(1) counsel's performance was deficient, falling below an objective standard of reasonableness, and [whether] (2) the deficient performance prejudiced the respondent." *Id*. To establish prejudice, a party must show "a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448; 861 NW2d 303 (2014), quoting MCR 3.965(B)(12) (quotation marks omitted). Pursuant to MCL

712a.13a(9), a court is authorized to place a child in foster care only if it finds all of the following conditions:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.[2]

Because KS is Native American and eligible for membership in a tribe, provisions of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.*, were triggered. These statutes impose certain requirements in child-protective proceedings involving a Native American child—such as proof by clear and convincing evidence that the child should be placed in foster care. See *In re England*, 314 Mich App 245, 259; 887 NW2d 10 (2016).[3] Specifically, MCL 712B.15(2) of MIFPA states:

> An Indian child may be removed from a parent or Indian custodian, placed into a foster care placement, or, for an Indian child already taken into protective custody, remain removed from a parent or Indian custodian pending further proceedings, only upon clear and convincing evidence that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, that the active efforts were unsuccessful, and that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child. The active efforts must take into account the prevailing social and cultural conditions and way

---

[2] A 2022 amendment did not affect the language at issue. See 2022 PA 200. See also MCR 3.965(C)(2).

[3] A federal circuit court has concluded that certain provisions of the ICWA are unconstitutional on the basis that they commandeer states. See *Brackeen v Haaland (Oh Rehearing)*, 994 F 3d 249, 268 (CA 5, 2021), cert gtd ___ US ___; 142 S Ct 1205; ___ L Ed 2d ___ (2022). But this Court has found that the ICWA and the MIFPA provisions that are pertinent to the present appeal "are essentially identical[.]" *In re England*, 314 Mich App at 259. As such, the conclusion in *Brackeen* is of little import because Michigan state law is applicable.

of life of the Indian child's tribe. The evidence must include the testimony of at least 1 qualified expert witness, who has knowledge of the child rearing practices of the Indian child's tribe, that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child.

In this case, respondent contends that his trial attorney was ineffective for failing to file an appeal[4] of the initial removal decision following the preliminary hearing. But respondent has not demonstrated that an appeal would have been successful. It is undisputed that respondent was unavailable to provide care and custody to KS because he was (and still is) incarcerated. We recognize that an incarcerated parent has the general authority to direct who is to care for his or her child. See, e.g., *In re Sanders*, 495 Mich 394, 420-421; 852 NW2d 524 (2014), and *In re Mason*, 486 Mich 142, 161 n 11; 782 NW2d 747 (2010). But the *only* person selected by respondent was his mother, whom the GTBOCI determined was not appropriate for placement due to her "substantiated history of neglect." At the removal hearing, the tribe expert opined that KS should be placed out of the home. And both he and the GTBOCI were in agreement with KS's placement in the foster home.

Respondent contends that ineffective assistance of counsel is apparent because, as a result of the failure to appeal the removal decision, his trial attorney's arguments at the adjudication trial were "rendered moot." Respondent's argument is not easy to decipher—he appears to be referring to the court's ruling that the circumstances of removal would not be covered in the adjudication trial. But the court's justification for this ruling was as follows: "[W]e want the jury to focus on whether the statutory grounds have been met and not where the child is. . . . [A]nd if we get into removal, then that muddies the waters. So I think we'll continue with our longstanding tradition that we not bring in any testimony about removal so that the jury can be focused on the statutory grounds for adjudication." Contrary to respondent's implication, the failure to appeal the removal decision had no bearing on the court's decision to prohibit any discussion of removal at the adjudication. Respondent fails to demonstrate how providing the jury with additional[5] evidence regarding the removal would have changed the jury verdict. Respondent has not established any entitlement to appellate relief. He did not seek an evidentiary hearing on his ineffective assistance

---

[4] See MCR 3.993(A)(6)(e) (dealing with appeals as of right for Indian children).

[5] The jury was informed, in a general sense, about the events at the homeless shelter that led to removal of the child.

claim, and the existing record does not support that an appeal would have been successful. On this record, respondent cannot show he was prejudiced by his counsel's failure to appeal the removal decision.

Affirmed. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Mark J. Cavanagh
/s/ James Robert Redford